CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

JONAH P. ROSS (CABN 305076)
Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3680
FAX: (510) 637-3724
jonah.ross@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MAURICE HERRON,<br><br>Defendant. | CASE NO. 4:25-CR-00362 AMO<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Date: October 19, 2026<br>Time: 2:00 p.m. |

## INTRODUCTION

Defendant Maurice Herron, a man with considerable criminal history including multiple prior felony convictions for unlawfully possessing firearms, including one for which he was on parole at the time of the instant offense, possessed three semiautomatic pistols, each loaded with ammunition. Herron has pleaded guilty in the instant case to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

For the reasons set forth below, the government requests that the Court sentence Herron to 46 months imprisonment, which represents the middle of the guidelines range as calculated by the government, and a three-year term of supervised release.

/ / /

## BACKGROUND

### A. Offense Conduct

While on parole following a state prison sentence for possessing a firearm as a felon, Herron again possessed loaded firearms on three separate occasions. Each firearm had previously traveled across interstate and/or foreign borders, and prior to each possession, Herron knew that he had been convicted of multiple crimes punishable by more than a year in custody.

1. <u>January 7, 2025 – While on Parole, Herron Ran from Police While Possessing a Loaded Glock Pistol with a Round in the Chamber and Twelve Rounds in the Magazine (the Crime of Conviction, Case No. 25-CR-362)</u>

On January 7, 2025, officers with the Oakland Police Department were patrolling the area of 12th Street and Peralta Street in Oakland, CA, and observed Maurice Herron standing next to a food stand. *See* Presentence Investigation Report ("PSR") ¶ 6. Officers ran a record check of Herron and saw that he was on probation or Post Release Community Supervision (PRCS).[1] *Id.* Officers exited their vehicle and called to Herron, who immediately began to run away. *Id.* Officers observed Herron place his right hand in his front waistband area as he fled. *Id.* After a brief chase, officers detained Herron and located a firearm and an extended magazine in his right jacket pocket. *Id.* Herron's firearm was a loaded Glock Model 30 semiautomatic pistol, with 12 rounds of .45 caliber ammunition loaded in the magazine and one round in the chamber—meaning it was ready to be fired with a pull of the trigger. *Id.* A record check of the firearm showed the firearm had been reported stolen out of Modesto, California. *Id.*

2. <u>April 21, 2025 – Officers Arrested Herron and Located a Glock Pistol Loaded with Nineteen Rounds of Ammunition Where He Had Been Seated in a Vehicle</u>

On April 21, 2025, officers with the Oakland Police Department were investigating a robbery/homicide that had occurred two days earlier. PSR ¶ 41. They obtained an arrest warrant for Herron related to that investigation, and they located him sitting in the rear passenger seat of an SUV, along with other occupants inside the vehicle. *Id.* Officers conducted a stop and detained Herron, along with all individuals in the vehicle and two other occupants who were sitting on a nearby concrete ledge

[1] Although the officers' database checked showed Herron was on either probation or PRCS, Herron was actually on parole at the time. PSR ¶ 36.

near the vehicle. *Id.* Officers conducted a search of the SUV and located a semiautomatic Glock model 17 pistol in the rear right passenger seat door pocket where Herron had been seated. *Id.* The pistol was loaded with 19 rounds of ammunition. PSR ¶ 9.

3. <u>November 15, 2025 – After Being Arrested Following His Indictment, Herron Possessed a Loaded Glock Pistol with a Round in the Chamber and Fourteen Rounds in the Magazine, Which He Dropped in the Back of the Patrol Vehicle Without Alerting Police (Case No. 25-CR-443)</u>

On November 15, 2025, an officer with the Orinda Police Department conducted a traffic enforcement stop on Herron after Herron made an illegal U-turn. PSR ¶ 7. After Herron provided his driver's license, the officer ran a record check and discovered Herron was on parole and had an outstanding federal warrant for his arrest. *Id.* The officer placed Herron under arrest and conducted a cursory pat search during which he failed to find any weapons on Herron's person. *Id.* As officers would later learn, Herron was in fact carrying a loaded and chambered Glock pistol in his waistband, but he declined to alert the police officer to that danger. Herron was placed in the rear seat of the officer's patrol vehicle, where Herron was recorded by a rear-facing camera. *Id.* The video showed that while Herron was handcuffed and seated in the rear of the patrol vehicle and attempting to distract the officer by chatting with him, he removed a firearm from his waistband and placed it under the right rear seat. *Id.* Herron then used his foot in an attempt to conceal the firearm. *Id.*

On November 26, 2025, another officer from the Orinda Police Department was working patrol and used the same patrol vehicle in which Herron was transported on November 15, 2025. PSR ¶ 7. While the officer was preparing to transport another arrestee, the officer located a semiautomatic 9mm Glock model 19 pistol bearing on the rear passenger floorboard, in the same location where the video footage showed Herron had placed the firearm. *Id.* The officer rendered the firearm safe and discovered that there were 14 live rounds of ammunition in the magazine and one live round inside the chamber of the firearm—meaning that while Herron interacted with the police officer and sat in the back of the patrol vehicle, the pistol could be fired with a pull of the trigger. *Id.*

**B. Procedural History**

On October 30, 2025, a grand jury returned an Indictment in Case No. 4:25-CR-362 AMO, charging Herron with one count of possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1).

PSR ¶ 1. On December 3, 2025, while Herron was on pretrial release, he was charged by complaint for the November 15, 2025 possession. Case No. 4:25-CR-433 AMO, Dkt. 1. Following a detention hearing, he was ordered detained on December 18, 2025. Case No. 4:25-CR-433 AMO, Dkt 12. That same day, a grand jury returned an Indictment in Case No. 25-CR-433 AMO, again charging him with possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). Dkt. 14.

On August 3, 2026, pursuant to a plea agreement, the defendant pleaded guilty to Count One of the Indictment. PSR ¶ 2.

**C. Criminal History**

In addition to extensive juvenile criminal history, Herron has suffered the following convictions as an adult:

- 2014: Cal. Penal Code § 211 (robbery), felony;
- 2019: Cal. Pen. Code § 459 second degree (non-residential burglary), felony;
- 2019: Cal. Pen. Code § 459 second degree (non-residential burglary), felony;
- 2020: Cal. Pen. Code § 29900 (possession of a firearm by a violent felon), felony;
- 2021: Cal. Pen. Code § 459 second degree (non-residential burglary), felony;
- 2021: Cal. Pen. Code § 29800 (possession of a firearm by a felon), felony;

## ARGUMENT

**A. Legal Standard**

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include (among other factors):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**B. Sentencing Guidelines Calculation**

The government contends that the following guidelines apply. Although defense and the PSR decline to apply the two-point increase for possessing at least three firearms, the government contends that the evidence is sufficient to show that Herron knowingly possessed a third firearm on April 21, 2025.

| | **U.S.S.G. Section** | **Level/Points** |
|---|---|---|
| Base offense level | § 2K2.1(a)(6) –prohibited person with firearm | 14 |
| Specific offense characteristics | § 2K2.1(b)(1) – 3-7 firearms<br><br>§ 2K2.1(b)(4)(A) | +2<br><br>+2 |
| Acceptance of responsibility | §3E1.1(a) and (b) | -3 |
| Total offense level | | 15 |

The Probation Officer concluded that Herron's criminal history score is 16, and Herron therefore falls into Criminal History Category VI. *Id.*, ¶ 39. The guidelines range for someone with total offense level 15 and CHC VI is 41-51 months.

**D. The United States' Sentencing Recommendation**

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a custodial sentence of 46 months—the middle of the applicable guidelines range as argued by the government—to be followed by a three-year term of supervised release. Consistent with 18 U.S.C. § 3553(a), such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense and to provide specific deterrence given Herron's criminal history.

Herron repeatedly committed the crime of possessing firearms as a felon while on parole for the same offense. These guns were highly dangerous not only because they were semiautomatic pistols capable of firing a round with each pull of the trigger, but because Herron kept them loaded and with a

round in the chamber. They were ready to be fired, including while he rode in the back of a patrol vehicle following his arrest in the instant case. Neither his multiple prior convictions for essentially the *same offense*, nor the fact that he was on parole following a prison sentence, were sufficient to deter him.

Nor was the fact that he had recently become a father. He continued to carry loaded firearms, despite the obvious need to remain free to care for his family. Unfortunately, Herron has proven through his extensive criminal history and the facts of this case, that he cannot be deterred from possessing firearms while out of custody. A 46-month sentence is appropriate.

## CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence Herron to 46 months in prison followed by a three-year term of supervised release.

DATED: October 8, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

________/s/__________________
JONAH P. ROSS
Assistant United States Attorney