ALBERT J. BORO, JR. (CA Bar #126657)
*ajboro@boro-law.com*
BORO LAW FIRM
345 Franklin Street
San Francisco, CA 94102
Telephone: (415) 621-2400
Facsimile: (415) 276-5870

Attorney for Defendant
MAURICE HERRON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

MAURICE HERRON,

Defendant.

No. 25-CR-00362-AMO

DEFENDANT MAURICE HERRON'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE IN SENTENCING

Date: October 19, 2026
Time: 2:00 p.m.
Court: Hon. Araceli Martinez-Olguin

# TABLE OF CONTENTS


TABLE OF CONTENTS ........................................ i

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

I. INTRODUCTION ........................................ 1

II. STATEMENT OF FACTS ........................................ 2

A. Case No. 25-cr-00362-AMO ........................................ 2

B. Case No. 25-cr-00433-AMO ........................................ 3

C. Disputed and Uncharged Firearm Seized on April 21, 2025 ........................................ 3

III. SENTENCING GUIDELINES CALCULATION ........................................ 4

IV. MOTION FOR DOWNWARD VARIANCE IN SENTENCING, AND REQUEST FOR PROBATION'S RECOMMENDED SENTENCE OF 26 MONTHS ........................................ 5

V. CONCLUSION ........................................ 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant Maurice Herron respectfully submits this Sentencing Memorandum and Motion for a Downward Variance in Sentencing for his upcoming sentencing hearing. He pleaded guilty to one count of violating 18 U.S.C. § 922(g)(1), felon in possession of a firearm. U.S. Probation has recommended a sentence of 26 months' imprisonment, which is a downward variance of 7 months from the Sentencing Guidelines range of 33 to 41 months. *See* Presentence Investigation Report ("PSR") Sentencing Recommendation at ECF pp. 26-27, *United States v. Maurice Herron*, No. 25-cr-00362-AMO, filed Oct. 5, 2026 (Dkt. #37) (N.D. Cal.). Mr. Herron joins in Probation's recommendation for a variance and believes the recommended 26-month sentence is "a sentence sufficient, but not greater than necessary, to comply with the purposes" of the federal sentencing statute. 18 U.S.C. § 3553(a).

In contrast, the Government recommends a sentence of 46 months, which it characterizes as "the middle of the guidelines range," but its recommendation is based on an incorrect Guidelines calculation that includes a 2-level increase for the alleged possession of 3 firearms. *See* Gov. Sentencing Memo. at 1 & 5, *United States v. Maurice Herron*, No. 25-cr-00362-AMO, filed Oct. 6, 2026 (Dkt. #38) (N.D. Cal.). However, there are only 2 firearms that are relevant conduct for Mr. Herron's sentencing, as explained in Section III *infra*. The Government's recommended sentence is significantly above the applicable Guidelines range and should not be countenanced.

The requested 26-month sentence is supported by the Mitigation Report the defense obtained from Katie Herman, a Licensed Clinical Social Worker (LCSW), and considerations of Mr. Herron's personal history and characteristics. The Mitigation Report documents the trauma that Mr. Herron experienced beginning at the age of 12 with the murder of his stepfather and Mr. Herron's subsequent involvement in the criminal justice system when he was only 13 years old. Mitigation Report of K. Herman, LCSW, dated June 5, 2026, at 3-5.[1] As explained in Section IV *infra*, the series of traumatic events experienced by Mr. Herron, including being shot when someone attempted

---

[1] The Mitigation Report is attached as Exhibit A to the Declaration of Albert J. Boro, Jr. ("Boro Decl."), *United States v. Maurice Herron*, No. 25-cr-00362-AMO, filed concurrently herewith (N.D. Cal.).

to rob him, led him to believe he needed to carry a firearm for protection. Mr. Herron has a one-yar old son with his significant other of 7 years, and the last 10 months that he has been away from his son in pretrial detention has reinforced his desire to change his behavior and avoid reoffending, so that he can be present in his son's life. The requested sentence of 26 months' custody is sufficient to deter Mr. Herron and promote respect for the law and protect the public, while allowing Mr. Herron to reunite with his family while his son is still young and obtain the mental health and substance abuse treatment he needs.

## II. <u>STATEMENT OF FACTS</u>

This case involves the possession of two firearms charged in two separate Indictments in Case Nos. 25-cr-00362-AMO and 25-cr-00433-AMO in this District. The charged in both Indictments are resolved by the Plea Agreement entered into between Mr. Herron and the Government. *See* Plea Agreement at ¶¶ 1 & 14, *United States v. Maurice Herron*, No. 25-cr-00362-AMO, filed Aug. 3, 2026 (Dkt. #35) (N.D. Cal.).

The first Indictment arises from Mr. Herron's arrest by Oakland police officers for being a felon in possession of a firearm on January 7, 2025. *See* Indictment, *United States v. Maurice Herron*, No. 25-cr-00362-AMO, filed Oct. 30, 2025 (Dkt. #1) (N.D. Cal.). The second Indictment arises from Mr. Herron's possession of a firearm on November 15, 2025, when he was arrested on the federal warrant arising from the October 30, 2025 Indictment in Case No. 25-cr-00362-AMO. *See* Indictment, *United States v. Maurice Herron*, No. 25-cr-00433-AMO, filed Dec. 18, 2025 (Dkt. #14) (N.D. Cal.). On December 22, 2025, the Court found that Case Nos. 25-cr-00362 and 25-cr-00433 are related cases, as defined by N.D. Cal. Crim. L.R. 8-1(b), and ordered the later-filed Case No. 25-cr-00433 reassigned to this Court. *See* Order Reassigning Case, *United States v. Maurice Herron*, No. 23-cr-00433, filed Dec. 22, 2025 (Dkt. #17) (N.D. Cal.). As part of the Plea Agreement, the Government has agreed to move to dismiss Case No. 25-cr-00433-AMO at the time of sentencing. Plea Agreement at ¶ 14.

### A. <u>Case No. 25-cr-00362-AMO</u>

In the Plea Agreement, Mr. Herron pleaded guilty to Count One of the Indictment in Case No. 25-cr-00362-AMO, charging him with being a felon in possession of a firearm on January 7,

2025, in violation of 18 U.S.C. § 922(g)(1). Plea Agreement at ¶ 1. On January 7, 2025, Oakland police officers observed Mr. Herron standing next to a food stand, and had determined from a records check that he was on post-release supervision and decided to do a probation search, but he ran when they called his name. PSR at ¶ 6. The officers caught up with Mr. Herron, searched him, and found a Glock model 30 pistol on his person. *Id.* Mr. Herron admitted to possessing the pistol while being a prohibited person, and that the Government could prove that the gun had traveled in interstate commerce and had been reported stolen out of Modesto. Plea Agreement at ¶ 2.

**B. <u>Case No. 25-cr-00433-AMO</u>**

Mr. Herron was charged in the related Case No. 25-cr-00433-AMO with one Count of being a felon in possession of a firearm on November 15, 2025. Indictment, No. 25-cr-00433 (Dkt. #14). When Mr. Herron was arrested on the federal warrant arising out of Case No. 25-cr-00362, the officer conducted a cursory pat-down search and placed Mr. Herron in handcuffs in the back of the patrol car. PSR at ¶ 7. Mr. Herron managed to remove a Glock model 19 pistol from his pants and put it on the floor under the seat, as shown on the video of a rear-facing camera in the patrol car, which the police reviewed after the firearm was found several days later. *Id.* at ¶¶ 7-8. In the Plea Agreement, Mr. Herron admitted he possessed the Glock model 19 pistol and that the Government could prove it traveled in interstate commerce. Plea Agreement at ¶ 2.

**C. <u>Disputed and Uncharged Firearm Seized on April 21, 2025</u>**

On April 21, 2025, Oakland police officers approached a parked SUV vehicle in which Mr. Herron was seated in the right rear seat, and officers ordered him to exit the vehicle. PSR at ¶ 9. There were several other people in the SUV, including two persons who had exited the vehicle prior to the arrival of the police and were sitting on a concrete ledge near it. *Id.* Officers searched the vehicle and found a Glock model 17 pistol in the pocket of the SUV's right rear door near where Mr. Herron had been sitting. *Id.* In the Plea Agreement, the parties agreed to the foregoing facts and that the Government could prove that the Glock model 17 pistol had traveled in interstate commerce. Plea Agreement at ¶ 2. However, the parties reserved for the Court to decide whether Mr. Herron knowingly possessed the Glock model 17 pistol and whether it was relevant conduct for purposes of sentencing in this case. *Id.* at ¶¶ 2 & 7.

## III. SENTENCING GUIDELINES CALCULATION

Mr. Herron agrees with the Sentencing Guidelines calculation set out in in the PSR (at ¶¶ 13-23):

| | | |
|---|---|---|
| 1. | Base Offense Level (Unlawful Possession of a firearm and ammunition): (U.S.S.G. § 2K2.1(a)(6)) | **14** |
| 2. | Specific Offense Characteristics (stolen firearm) (U.S.S.G. § 2K2.1(b)(4)(A)) | **+2** |
| 3. | Acceptance of Responsibility (U.S.S.G. § 3E1.1(a) & (b)) | **-3** |
| 4. | Total Offense Level | **13** |

Mr. Herron agrees with the PSR that he is a Criminal History Category (CHC) VI. PSR at ¶ 39. The resulting Guidelines recommended sentencing range for an Offense Level of 13 and a CHC of VI is 33 to 41 months.

The Government urges the Court to adopt a Guidelines calculation with an Offense Level of 15 based on including the firearm confiscated from the SUV on April 21, 2025 as a third firearm possessed by Mr. Herron. Gov. Sentencing Memo. at 5 (requesting a 2-level increase under U.S.S.G. § 2K2.1(b)(1)(A)). The Government asserts that "the evidence is sufficient to show that Herron knowingly possessed a third firearm on April 21, 2025." *Id*. But it offers no support for that contention other than the fact the Glock model 17 pistol was located in the door pocket next to where Mr. Herron had been sitting. *Id*. at 3. The Government does not address the fact there were several people who had been sitting inside the SUV, any of whom could have possessed the firearm. As Probation pointed out in rejecting the Government's objection to its Guidelines calculation, no additional support other than the location of the gun in the door pocket was provided by the Government to show Mr. Herron's knowing possession of it, several other people were in the vehicle at the same time as Mr. Herron, and no DNA evidence was produced by the Government. PSR Addendum at ECF p. 24. Additionally, the Government did not produce in discovery fingerprint evidence or ownership records related to the firearm. Finally, the PSR notes that the Alameda

County District Attorney's Office dismissed all charges on that firearm on December 12, 2025. PSR at ¶ 9. In sum, the Government has presented insufficient evidence to prove by a preponderance of the evidence that Mr. Herron knowingly possessed the firearm seized on April 21, 2025.

The Government has also failed to prove by a preponderance of the evidence that the firearm confiscated on April 21, 2025 is relevant conduct for purposes of sentencing Mr. Herron on Count One of the Indictment in Case No. 25-cr-00362. The offense of felon in possession of a firearm is covered by the Guidelines in § 2K1.2 and accordingly is subject to grouping under § 3D1.2(d), so the Court's determination of relevant conduct for specific offense characteristics is covered by § 1B1.3(a)(1) & (a)(2). Here, the alleged possession of the April 21, 2025 firearm did not occur "during the commission of the offense of conviction" (the January 7, 2025 firearm possession) or in preparation for it or attempting to avoid detection of that offense. *See* U.S.S.G. § 1B1.3(a)(1). The Government also has presented no evidence that the alleged April 21, 2025 firearm possession was part of the same course of conduct or a common scheme or plan as the January 7, 2025 firearm possession. *See id.* § 1B1.3(a)(2). In contrast to a charge where multiple firearms are trafficked over a period of time as part of a common scheme or course of conduct, here the Government alleges a discrete possession of a firearm on April 21, 2025 with no evidence tying it to the offense of conviction that occurred on January 7, 2025. Thus, the alleged possession of the firearm on April 21, 2025 is not relevant conduct for sentencing Mr. Herron on the January 7, 2025 firearm possession count.[1]

The Court should adopt the Guidelines calculation supported by the defense and Probation and find that the Offense Level is 13.

## IV. MOTION FOR DOWNWARD VARIANCE IN SENTENCING, AND REQUEST FOR PROBATION'S RECOMMENDED SENTENCE OF 26 MONTHS

Mr. Herron joins in the recommendation of Probation for a downward variance to a sentence of imprisonment of 26 months. PSR Sentencing Recommendation at ECF pp. 26-27. Section 3553(a) directs the Court to " 'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting

[1] The firearm seized on November 15, 2025 is treated differently because the parties agreed in the Plea Agreement to treat it as relevant conduct for this sentencing in order to resolve Case No. 25-cr-0433-AMO.

18 U.S.C. § 3553(a)). "The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam) (emphasis in original). A consideration of the 3553(a) sentencing factors demonstrates that a sentence sufficient, but not greater than necessary, to meet sentencing goals is a sentence of 26 months' custody and three years of supervised release, with a condition to participate in mental health and substance abuse counseling at the direction of Probation.

First, considerations of Mr. Herron's "history and characteristics" support the recommended sentence. As documented in the Mitigation Report prepared by Katie Herman, LCSW (Boro Decl. Ex. A), Mr. Herron's involvement in the criminal justice system began at the age of 13, about 7 months after his stepfather Terrance Thompkins was shot and killed in January 2011 while he watched his daughter playing at a park in Oakland. Mitigation Report at 3; PSR at ¶ 52.[1] This childhood trauma altered the course of Mr. Herron's life. It caused his mother to be depressed and forced her to work longer hours to support the family on her own, resulting in her spending less time with him and his younger sister, who he helped look after. Mr. Herron reports that in the fallout of the murder of his stepfather, he began committing burglaries to get money. Mitigation Report at 4; PSR at ¶¶ 52 & 60. The shooting deaths of his god brothers in 2018 (Douglas Andrews) and 2020 (Quinton Williams) in Oakland caused him to believe he needed to carry a firearm for protection due to his living in a violent area. Mitigation Report at 4; PSR at ¶ 60. In 2021, Mr. Herron also was shot during an attempted robbery as he walked to his car after leaving a Halloween party in Oakland, and he was hospitalized and had surgery for injuries to his right lung and liver, but he never heard from any police investigators. Mitigation Report at 4-5; PSR at ¶ 57. This incident reinforced his mindset that he needed to carry a firearm for self-protection. *See* Mitigation Report at 5; PSR at ¶ 12.

Not unexpectedly, these traumatic events have caused Mr. Herron to suffer from Posttraumatic Stress Disorder (PTSD) and substance abuse issues from attempting to self-medicate the stress, intrusive traumatic memories, mood changes, and hyperarousal he has experienced. Mitigation Report at 6 (reporting on Mr. Herron's symptoms and scientific literature supporting that exposure to early

---

[1] Probation was able to verify the gun violence incidents recounted in this paragraph based on contemporaneous news accounts and medical records Mr. Herron's counsel produced to the Government and Probation and an interview of Mr. Herron's mother Ronisha Randolph. Defense counsel can produce those materials to the Court if it desires to review them.

trauma results in adverse mental health consequences). Ms. Herman administered the National Stressful Events Survey PTSD Short Scale (NSESSS) on Mr. Herron and concluded that he meets the criteria for PTSD. Mitigation Report at 6; PSR at ¶ 59. She reports that Mr. Herron's daily use of marijuana, beginning at age 12 or 13, and his use of Percocet (which he discontinued using) were attempts to numb the trauma and feel calm. Mitigation Report at 6-7; PSR at ¶¶ 62-63. Ms. Herman concludes that Mr. Herron, who has never received mental health counseling to address these traumatic events, would "greatly benefit" from community-based co-occurring treatment services of mental health and substance abuse counseling. Mitigation Report at 9-10; *see* PSR at ¶ 60; PSR Sentencing Recommendation at ECF p. 28. She states this co-occurring treatment would help him understand thinking patterns, such as negative beliefs and fear of traumatic things reoccurring, that can influence his decision to carry a firearm. Mitigation Report at 9-10. Mr. Herron has acknowledged that his behavior of carrying a firearm, even though motivated by a desire for self-protection, has caused him to " 'keep getting into trouble' " and " 'has stopped [him] from progressing in life,' " PSR at ¶ 12, and believes he could benefit from treatment. *Id.* at ¶ 60.

Mr. Herron has been in and out of incarceration since the age of 13, but he has the potential to change the direction of his life. He is in a 7-year relationship with his significant other Remy Martin, and they have a son who recently turned 1-years old. The Government argues that the fact Mr. Herron had recently become a father did not deter him from possessing a firearm when he was arrested on November 15, 2025. Gov. Sentencing Memo. at 6. However, since the time of his arrest, Mr. Herron has been in federal pretrial detention for more than 10 months, and his son has had his first birthday, which Mr. Herron missed. These 10-months separated from his son have caused Mr. Herron to realize that he needs to change his behavior if he is going to be present in his son's life. In his PSR interview, he recognized that his decision to carry a firearm resulted in him not "being able to take care of my son." PSR at ¶ 12. The PSR acknowledges this self-awareness by Mr. Herron of the consequences of his actions and concludes that his new parental responsibility "may influence Mr. Herron to make positive lifestyle changes." PSR Sentencing Recommendation at ECF p. 27.

Mr. Herron has written a letter to the Court that shows his awareness of the bad decisions he

has made in the past and the repercussions they have had on him and his family. Boro Decl. Ex. C (Herron letter). Mr. Herron acknowledges the trauma he experienced and its influence on his behavior, including possessing firearms, but states that he has "made the decision to change my life for the better" and that becoming a father has given him "a new sense of purpose and responsibility." *Id*. He states that "[m]y son is my motivation to become a better man," and "I want to be present in his life, guide him in the right direction, and break the cycle of violence and trauma that I grew up around." *Id*. He further discusses his work goals to complete trucking school and obtain a commercial driver's license (CDL) in order to work at a friend's company transporting vehicles to dealerships and auctions in the Bay Area and eventually start his own business. *Id*.; see PSR at ¶¶ 54 & 65.

Mr. Herron's sincerity in changing his decisionmaking is shown by his participation in educational and lifestyle courses during his detention at the Contra Costa County Jail. He participated in the Men and Women of Purpose West County Mentor Program. PSR at ¶ 66. This program is designed to help inmates understand the unhealthy decisions they have made that have resulted in their incarceration and how to make better life choices. Cedric B. Winston, Reentry Manager for the program, has provided a letter of support discussing Mr. Herron's participation in the program's group sessions on Cognitive Behavior Therapy to help him make better choices with how he thinks about and addresses everyday life challenges. *See* Boro Decl. Ex. D (Winston letter). Mr. Winston states that it is his professional opinion that Mr. Herron "would benefit more from a[n] outpatient environment, and a Men's Support Group rather than longer incarceration," and he can help younger men who are facing similar issues see a path to overcoming them. *See id*. Mr. Herron has also completed other educational sessions designed to help offenders understand the decisions and lifestyle choices that have led to their crimes and how to make better decisions and reintegrate into the community. PSR at ¶ 66; Boro Decl. Ex E (certificates for educational sessions completed).

Mr. Herron's family attest that he is committed to change and becoming a responsible father and member of the community. *See* Boro Decl. Ex. F (letters of support). Remy Martin, his significant other for about 7 years and the mother of his son, states she has "personally seen him make progress and take steps toward building a better future for himself," and before his

incarceration he was working and was present in his son's life. *Id.* His cousin Loneka Lewis has observed him when he was a teenager to recently becoming a father, and she states that "[f]atherhood has been one of the biggest influences on Maurice" and "has given him a greater sense of purpose and responsibility." *Id.* His mother Ronisha Randolf describes him as "kind, caring, hardworking, respectful, and dependable," and states he has family support that will help him become a good father and a responsible member of the community. *Id.*; see PSR at ¶ 55 (statement made to Probation by Ms. Randolph).

A common redemptive theme emerges from Mr. Herron's letter and the letters submitted by his family and the Reentry Manager at Men and Woman of Purpose, as well as the Mitigation Report. They paint a picture of Mr. Herron as having been deeply affected by trauma that he experienced starting early in his life but still emerging as a caring person devoted to his family with a newfound purpose to be present in his infant son's life. A shorter prison sentence combined with community-based mental health and substance abuse counseling, job training, and reintegration with his family and son provide the best opportunity for breaking the cycle of recidivism.

Finally, the recommended sentence of 26 months' custody combined with 3 years of supervised release is of sufficient length to satisfy the four sentencing factors set out in Section 3553(a)(2). The subsection (a)(2) factors require a balancing of considerations so that the sentence reflects the seriousness of the offense and promotes respect for the law, deters criminal conduct, and protects the public from further crimes by the defendant, while providing the defendant with needed training and treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2)(A)-(D). 26 months is a substantial prison sentence that sends a message to Mr. Herron and other ex-felons who might consider possessing a firearm that prison time will result. In doing so, the sentence promotes respect for the law and deters others from committing similar crimes. The requested sentence protects the community from further crimes by Mr. Herron by keeping him under the supervision of the federal criminal justice system for over 5 years, incapacitating him for about 2 years and then supervising his participation in community-based rehabilitation services for another 3 years. Finally, as supported by the Mitigation Report, a shorter term of incarceration combined with community-based co-occurring treatment and vocational training will provide Mr. Herron the services he needs to address

his PTSD from his untreated trauma and develop the skills and coping mechanisms needed to manage the daily stressors and struggles in life through responsible decision-making.

## V. CONCLUSION

For the foregoing reasons, Mr. Herron respectfully requests that the Court impose a sentence of 26 months of imprisonment and 3 years of supervised release with conditions that he participate in mental health and substance abuse counseling, as directed by Probation. Mr. Herron also requests that the Court recommend to the Bureau of Prisons that he be housed at a facility close to the San Francisco Bay Area to maintain family contact.

Dated: October 13, 2026

Respectfully Submitted:

BORO LAW FIRM

*/s/ Albert J. Boro, Jr.*
ALBERT J. BORO, JR.

Attorney for Defendant
MAURICE HERRON